UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-21230-MOORE/Elfenbein

**ISABEL DEL PINO ALLEN**,

    Plaintiff,

v.

**GEICO GENERAL INSURANCE COMPANY**,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** is before the Court on Defendant GEICO General Insurance Company's ("Defendant") Motion to Dismiss, or in the alternative, Motion for More Definite Statement ("the Motion"), ECF No. [3], Plaintiff Isabel Del Pino Allen's ("Plaintiff") Complaint, ECF No. [1-1]. The Honorable K. Michael Moore has referred this matter to me "to take all necessary and proper action as required by law regarding all pre-trial, non-dispositive matters including discovery, and for a Report and Recommendation on any dispositive matters." ECF No. [14]. Having reviewed the Motion, the record, and the relevant law, I recommend that the Motion be **GRANTED** and the Complaint be **DISMISSED WITHOUT PREJUDICE**.

**I.**    **BACKGROUND**

    **A.**    **Factual Background**

On March 4, 2024, Plaintiff filed the Complaint in state court against Defendant for an alleged "breach of legal obligation and contractual agreement[.]" ECF No. [1-1] at ¶ 51. According to the Complaint, the allegations giving rise to Plaintiff's claims are as follows: On March 5, 2019, Plaintiff was in a car accident that Defendant's insured, Felipe Arencibia Chong

("Chong") caused. *See id.* at ¶¶ 4, 7. Following the accident, Plaintiff spoke to one of Defendant's agents who explained that, because its insured caused the accident, Defendant would cover all expenses resulting from it. *See id.* at ¶ 10. During a separate conversation, Plaintiff spoke with an agent for Plaintiff's insurer — Progressive Select Insurance Company ("Progressive"), who confirmed that the statements of Defendant's agent were accurate. *See id.* at ¶¶ 8, 11. After some time, however, Plaintiff began to doubt the veracity of the agents' statements and called the Florida Department of Financial Services ("FDOFS"). *See id.* at ¶ 12. Plaintiff spoke with an FDOFS agent, who sent a letter informing her that Defendant and Progressive entered into a settlement agreement that "liquidated" Plaintiff's "auto financing debt" and required Progressive to handle Plaintiff's outstanding "medical insurance claims[.]" *Id.* at ¶¶ 13, 16. Plaintiff then spoke with Defendant and Progressive's respective agents, who informed her that Defendant would pay $36,464.83 to satisfy her $37,061.17 auto financing debt and that Progressive would pay the debt's $596.34 balance. *See id.* at ¶¶ 17-18. Plaintiff told Defendant that, according to her understanding, Florida law requires insurers to replace a policyholder's vehicle in the case of a "total loss," not to satisfy the debt and leave the policyholder without a vehicle. *See id.* at ¶ 19. Defendant allegedly responded by stating that Plaintiff's references to Florida law would not change the terms of the settlement agreement. *See id.* at ¶ 20.

It is Plaintiff's position that Defendant and Progressive's settlement "did not improve [her] financial situation but worsened it." *Id.* at ¶ 25. According to Plaintiff, the benefits of owning a vehicle outweigh the benefits of being debt-free because, without a vehicle, she could not care for her elderly mother or travel to work. *See id.* at ¶ 24. Plaintiff claims that being without a vehicle forced her mother to relocate and caused Plaintiff to lose her job as an adjunct professor. *See id.*

at ¶ 27. In May 2019, Plaintiff filed a lawsuit against Defendant's insured, Chong, in the Eleventh Judicial Circuit in and for Miami-Dade County. *See id.* at ¶ 32.

After Plaintiff initiated the state-court action but before she served Chong, Chong's attorney — which Defendant hired — allegedly contacted Plaintiff, asking why she filed suit given that Defendant paid her claim in full. *See id.* at ¶ 33. Around this timeframe, a representative from Defendant also purportedly explained to Plaintiff that, if she wanted Defendant to cover her medical bills, she must submit supporting documentation. *See id.* at ¶ 34. Plaintiff alleges that she became indigent after losing her vehicle because she could no longer drive to work and that forcing her to pay her medical expenses was oppressive. *See id.* at ¶ 35. Plaintiff further alleges that Defendant assisted Chong in avoiding process servers and that Plaintiff was unable to serve Chong until April 22, 2021. *See id.* at ¶ 38.

Five months before Plaintiff served Chong, his counsel informed Plaintiff that Chong had a $20,000.00 policy with Defendant and, thus, that was the monetary limit of what she could recover from Defendant on Chong's behalf. *See id.* at ¶ 40. Chong's counsel also sent Plaintiff an email invoice stating that Plaintiff owed the Rawlings Company $12,775.49 for a subrogation claim. *See id.* at ¶ 41. She further told Plaintiff that Defendant would pay the invoice and forward her the balance of the $20,000.00 policy; alternatively, she offered to directly forward the entirety of the proceeds from Chong's $20,000.00 policy to Plaintiff.[1] *See id.*

The Complaint further alleges that on April 24, 2024, Plaintiff initiated a separate state-court action against Defendant, which Defendant removed to this District.[2] *See id.* at ¶ 48. It

---

[1] Apparently, the money Plaintiff owed the Rawlings Company related to the May 2019 detection and treatment of her kidney stones. *See id.* at ¶ 42.

[2] Although Plaintiff alleges that she filed her separate state-court complaint on April 24, 2024, this allegation appears to be a typo as the case numbers assigned to her action in state and federal court indicate

further explains that the Honorable Cecilia M. Altonaga dismissed that action without prejudice, finding Plaintiff's claims premature because she had yet to obtain a judgment or settlement against Defendant's insured, Chong. *See id.* According to the Complaint, following that dismissal, Plaintiff obtained a settlement against Chong. *See id.* at ¶¶ 4, 45.

### B. Procedural Background

On March 4, 2024, Plaintiff filed the Complaint against Defendant in state court. ECF No. [1-1]. Thereafter, on April 2, 2024, Defendant filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, asserting diversity of citizenship, as Defendant is a resident of Maryland and Nebraska while Plaintiff is a resident of Florida, and the amount in controversy exceeds $75,000, as Plaintiff is seeking more than $300,000 in damages. *See* 28 U.S.C. § 1332(a)(1) ("The district courts shall have *original jurisdiction* of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States[.]" (emphasis added)). *See* ECF No. [1] at 1-4. Within a week of filing its Notice of Removal, Defendant filed the instant Motion. *See generally* ECF No. [3]. Therein, Defendant argues for the dismissal of Plaintiff's Complaint on essentially two grounds: First, Defendant — reading the pleading liberally — construes the Complaint as arguing claims for breach of contract and breach of fiduciary duty under Florida law but contends that Plaintiff failed to state a claim with respect to either.[3] *See id.* at 5-7. Second, Defendant asserts that Plaintiff's Complaint is a shotgun pleading that fails to provide Defendant with fair notice of the claim (or claims) Plaintiff asserts against it. *See id.* at 4-5, 7-9. Alternatively, Defendant moves the Court for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). *See id.* at 9. In response to the Motion, Plaintiff filed an

---

that she filed her case in 2023. *See* ECF No. [1-1] at ¶ 48.

[3] Plaintiff apparently agrees with Defendant's interpretation of her claims, as she makes no effort to correct Defendant's reading of her claims in her Response. ECF No. [9] at 1; *see generally id.*

4

"Objection/Response []and Incorporated Memorandum of Law" ("Response"), ECF No. [9], opposing the Motion to which Defendant filed a Reply, ECF No. [10].  The Motion is now ripe for review.

## II.     LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309-10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545).

On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Unsupported factual allegations and legal conclusions, however, receive no such deference.  *See Iqbal*, 556 U.S.

5

at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). A complaint's "well-pled allegations must 'nudge the claims across the line from conceivable to plausible.'" *Hays v. Page Perry, LLC*, 627 F. App'x 892, 896 (11th Cir. 2015) (alterations adopted; quoting *Twombly*, 550 U.S. at 555, 570).

## III.   DISCUSSION

To recap, Defendant argues in the Motion that Plaintiff's Complaint should be dismissed because (1) Plaintiff failed to plead facts to plausibly allege claims for Florida breach of contract and fiduciary duty — claims Defendant construes from the Complaint[4] — and (2) Plaintiff's Complaint is a shotgun pleading. Alternatively, Defendant asks the Court to order Plaintiff to provide a more definite statement. I find the first argument convincing and well founded and recommend the dismissal of the Complaint on that ground. I explain my reasoning below.

### A.   **Florida Law Breach of Contract Claim**

Plaintiff fails to plausibly allege a breach of contract claim under Florida law against Defendant because there is no allegation that a contract existed between the Parties. "For a breach of contract claim, Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Verbal v. TIVA Healthcare, Inc.*, 628 F. Supp. 3d 1222, 1229 (S.D. Fla. 2022) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009)); *see also Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017) ("To prevail in a breach of contract action, a plaintiff must prove: (1) a valid contract existed; (2) a material breach of the contract; and (3) damages."). "To prove the existence of a contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Kolodziej v. Mason*, 774

---

[4] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed[.]" (quotation omitted)).

F.3d 736, 740 (11th Cir. 2014) (quotation omitted); *see also Presidio, Inc. v. Feeny*, No. 4D2023-0045, 2024 WL 461833, at *1 (Fla. 4th DCA Feb. 7, 2024) ("To show the contract existed, there must be: (1) an offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." (alteration adopted; quotation omitted)). Under Florida law, the question of whether a valid contract exists is a threshold question of law . . ." *Kolodziej*, 774 F.3d at 740; *see also Acumen Const., Inc. v. Neher*, 616 So. 2d 98, 99 (Fla. 2d DCA 1993) ("This court has held that the existence of a valid contract is a threshold question of law for the trial court.").

Nowhere in either her Complaint or Response does Plaintiff make this threshold showing. Specifically, Plaintiff fails to allege (1) that Defendant made her an offer, (2) that she accepted Defendant's offer, (3) that the Parties exchanged consideration, or (4) the specific terms of any agreement existing between her and Defendant. *See generally* ECF No. [1-1]; ECF No. [9]. Although the Motion alerted Plaintiff to this deficiency in her claim, Plaintiff's Response did not suggest the existence of additional facts that could support a contract between her and Defendant should leave to amend be granted. *See generally* ECF No. [9]. Instead, Plaintiff explicitly states in her Response that Defendant had a "contractual agreement with [her] insurer in relation to [her] claim against" Defendant's insured, thus confirming that no contract existed between her and Defendant. *Id.* at 3; *see also Wilder v. Wright*, 278 So. 2d 1, 3 (Fla. 1973) ("While the injured party may become a third[-]party beneficiary under the policy, . . . that third party may not automatically invoke all the provisions of the contract or statutes governing the rights and responsibilities flowing between insurer and insured.").

Indeed, even if a contract existed — which, based on the allegations in the Complaint, I do not find, Plaintiff still failed to plausibly allege the other two elements of a breach of contract claim under Florida law. Assessing the second element of the above-stated standard first, "[t]o determine

whether the conduct rose to the level of a 'material breach,' [courts] must look to the language of the contract and measure the breaching party's shortfall or failure in performance." *See JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co.*, 292 So. 3d 500, 509 (Fla. 2d DCA 2020) (footnote call number omitted). While Plaintiff has commented extensively on the perceived performative shortcomings of Defendant and its agents during its interactions with her, she has failed to articulate the terms of the contract that she claims existed between her and Defendant or the specific contractual terms the Defendant allegedly breached. *See generally* ECF No. [1-1]; ECF No. [9]. Furthermore, because the Complaint lacks facts to determine whether a breach occurred, it likewise lacks facts to determine whether Plaintiff's alleged damages resulted from that breach. *But* s*ee Terzis v. Pompano Paint & Body Repair, Inc.*, 127 So. 3d 592, 596 (Fla. 4th DCA 2012) ("[The plaintiff] alleged the existence of a valid contract whereby he paid the defendant $100 per month to store his boat and keep it free from damage or theft. [The plaintiff] alleged that the defendant materially breached the contract by allowing the boat to be stolen from the defendant's storage facility. Lastly, [the plaintiff] alleged damages measured by the lost value of the boat's original condition minus the amount which he recovered by selling the hull before he filed suit. Thus, the plaintiff alleged sufficient ultimate facts to show that he is entitled to relief.").

As Plaintiff has not alleged sufficient factual matters to establish any of the elements of a breach of contract claim under Florida law, this claim must be dismissed.

   **B.**  **Florida Law Breach of Fiduciary Duty Claim**

Plaintiff fails to plausibly allege a breach of fiduciary duty claim under Florida law because she fails to allege that Defendant owed her a fiduciary duty. In Florida, "[b]reach of fiduciary duty requires proof of (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages proximately caused by the breach." *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d

1330, 1338 (S.D. Fla. 2011), *aff'd*, 483 F. App'x 568 (11th Cir. 2012) (citation omitted); *see Gracey v. Eaker*, 837 So. 2d 348 (Fla. 2002) ("The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." (footnote call number omitted)). "A fiduciary relationship exists [in Florida] when there is a relationship of trust and confidence between parties, where confidence is given by one and trust is accepted by the other." *See Amoco Oil Co. v. Gomez*, 125 F. Supp. 2d 492, 509 (S.D. Fla. 2000) (citation omitted). Whether fiduciary duties were created between two parties is a question of fact." *Swerhun v. Gen. Motors Corp.*, 812 F. Supp. 1218, 1223 (M.D. Fla. 1993) (citations omitted). A plaintiff alleging a breach of fiduciary duty "must bring forth substantial evidence showing some dependency by one party and some undertaking by the other party to advise, counsel, and protect the weaker party." *Id.* (citations omitted).

First — and most importantly, Plaintiff fails to allege facts supporting the existence of a fiduciary relationship between her and Defendant. In her Complaint and Response, Plaintiff describes in detail her — and her insurer's — interactions with Defendant and its agents. *See generally* ECF No. [1-1]; ECF No. [9]. Namely, Plaintiff discusses: (1) Defendant's interaction with Progressive concerning the damage to her vehicle caused by Defendant's insured, ECF No. [1-1] at ¶¶ 7-8; (2) Plaintiff's interactions with Defendant's agent regarding the settlement agreement reached by Defendant and Progressive, *see id.* at ¶¶ 18, 20-21, 23-24, 27; (3) the assessment of Plaintiff's vehicle by Defendant's agent, *see id.* at ¶ 30; and (4) Plaintiff's communications with the attorneys Defendant hired to represent Chong, *see id.* at ¶¶ 33, 37-43. In none of these interactions, does Plaintiff claim that Defendant accepted the fiduciary duties to advise, counsel, and protect her. *See Amoco Oil Co.*, 125 F. Supp. 2d at 510; *see generally* ECF No. [1-1]; ECF No. [9]. Rather, the interactions between Plaintiff and Defendant occurred only

9

because of Defendant's obligation to satisfy the insurance claim Plaintiff filed against its insured. *See generally* ECF No. [1-1]; ECF No. [9].

Still, Plaintiff attempts to establish a fiduciary relationship by pointing to Chief Judge Altonaga's Order — entered in her previous case against Defendant — stating that "Defendant's insurance coverage of Chong gave rise to the 'legal obligation' to deal with Plaintiff[.]"[5] *Allen v. Geico Gen. Ins. Co.*, No. 23-21901-CIV, 2023 WL 5702163, at *3 (S.D. Fla. Aug. 23, 2023) (quoting *Progressive Select Ins. Co. v. Bigney*, 264 So. 3d 222, 225 (Fla. 5th DCA 2018)), *appeal dismissed*, No. 23-12855-H, 2023 WL 9837315 (11th Cir. Oct. 16, 2023); *see* ECF No. [1-1] at ¶ 49; ECF No. [9] at 2. Petitioner takes this statement out of context. In the case before Chief Judge Altonaga, Plaintiff attempted to sue Defendant for civil conspiracy. *See Allen*, 2023 WL 5702163, at *1. Defendant, in opposition, asserted that Plaintiff's claim against it was premature under Florida's nonjoinder statute and that the complaint failed to state a claim for relief. *See id.* at *2. Plaintiff then argued, in an attempt to circumvent the nonjoinder statute, that her claim against Defendant existed independent of Defendant's insurance contract with Chong. *See id.* at *2-3. So, when Chief Judge Altonaga found that Defendant had a "'legal obligation' to deal with Plaintiff[,]" she was finding that Defendant's legal obligation was rooted in the contractual relationship

---

[5] Plaintiff also references and quotes from an opinion purportedly issued on February 28, 2024, by the Eleventh Circuit Court of Appeals to support her position that Defendant has a legal obligation to deal with her and, therefore, owes her a fiduciary duty. *See* ECF No. [1-1] at ¶ 49; ECF No. [9] at 2. However, Plaintiff does not provide a case citation that would allow me to verify the existence of such a case. *See generally* ECF No. [1-1]; ECF No. [9]. And, a search of the Public Access to Court Electronic Records and Westlaw databases does not locate the referenced opinion. It appears Plaintiff is referencing Chief Judge Altonaga's order issued in Plaintiff's previously filed case because the language Plaintiff quotes matches the order almost exactly. *Compare* ECF No. [1-1] at ¶ 49 ("Defendant [GEICO's] insurance coverage of Chong gave rise to the 'legal obligation' to deal with Plaintiff, and that coverage provides the alleged ground for Plaintiff's claim[.] Plaintiff's claims [sic] is thus premature until Plaintiff obtains a judgment or settlement against Chong." (first alteration in original; emphasis omitted)) *with Allen*, 2023 WL 5702163, at *3 ('Defendant's insurance coverage of Chong gave rise to the 'legal obligation' to deal with Plaintiff, and that coverage provides the alleged ground for Plaintiff's claim. Plaintiff's claim is thus premature until Plaintiff obtains a judgment or settlement against Chong." (citation omitted)).

between Defendant and Chong and, therefore, Plaintiff's claim against the Defendant was premature under Florida's nonjoinder statute. *Id.* at *3 (quoting *Bigney*, 264 So. 3d at 225). Indeed, Chief Judge Altonaga's opinion declined to address whether the complaint in that case stated a claim for relief and did not comment on the existence of a fiduciary relationship between Plaintiff and Defendant.[6] *Id.* at *2.

Even if Plaintiff's allegations established that Defendant owed her a fiduciary duty, I find that she still failed to allege facts that a breach of fiduciary duty occurred or that she experienced harm due to that breach. By her own admission, Defendant and Progressive reached an agreement in which Defendant — on behalf of its insured — agreed to pay Plaintiff's bank $36,464.83 to satisfy her automobile loan debt. *See* ECF No. [1-1] at ¶ 18. Plaintiff argues that the decision to pay her bank directly violated Florida law because § 319.30(3)(a)1a, Florida Statutes, requires insurance companies to pay "the vehicle owner to replace the wrecked or damaged vehicle with one of like kind and quality[.]" *Id.* However, this position ignores that the bank — not Plaintiff — was the owner of the vehicle and, as such, was the entity entitled to the policy proceeds. *See World Fin. Grp., LLC v. Progressive Select Ins. Co.*, 300 So. 3d 1220, 1223 (Fla. 3d DCA 2020) (holding that the text of the automobile insurer's contract required the insurer to protect the interest of the automobile's lienholder, and therefore the insurer breached its duty to the lienholder by issuing a settlement check in name of the insureds only). And while Plaintiff did not receive the cash benefit of Defendant's first payout, she received the benefit of being relieved of her auto financing debt for which she would have been responsible in any event and a second payout from

---

[6] To be clear, this finding is different from the one Chief Judge Altonaga made in her Order. The Defendant does not argue and, I am not finding, that Plaintiff's claims should be dismissed because they are premature under Florida's nonjoinder statute. Rather, I find that Plaintiff's claims against Defendant should be dismissed because she failed to plausibly allege facts against Defendant to state claims for either breach of contract or fiduciary duty under Florida law.

11

Defendant, amounting to $20,000.00, which were Chong's policy limits.[7] *See* ECF No. [1-1] at ¶ 18, 41. In sum, due to Defendant's two large policy payouts, which she pleads in the Complaint, Plaintiff fails to allege harm stemming from a breach of fiduciary duty, assuming she could prove that such a duty existed.

Thus, Plaintiff fails to plausibly allege sufficient factual matter to state a claim for breach of fiduciary duty under Florida law, requiring dismissal of this claim.

## IV. CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that Defendant's Motion to Dismiss, **ECF No. [3]**, be **GRANTED,** that Plaintiff's Complaint, ECF No. [1-1], be **DISMISSED WITHOUT PREJUDICE,** and that Plaintiff be given an opportunity to file an amended complaint that cures the deficiencies identified herein to the extent she can do so. *See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commcns, Inc.*, 376 F.3d 1065, 1077 (11th Cir. 2004) ("The Supreme Court has emphasized that leave to amend must be granted absent a specific, significant reason for denial[.]" (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to

---

[7] Plaintiff also claims that she experienced harm when Defendant and Progressive decided to total her vehicle instead of repairing it. Briefly, for background, Plaintiff explained that both Defendant and Progressive found that repairing Plaintiff's vehicle would cost approximately 75% of its actual cash value. *See* ECF No. [1-1] at ¶ 17. Based on her reading of Florida Statute § 319.30(3), Plaintiff argues that an insurer cannot deem a vehicle a "total loss" unless the insurer finds that the cost of repairing the vehicle would exceed 80% of its actual cash value. *See id.* Plaintiff misreads the statute as classifying a vehicle a "total loss" *only* when the cost of repairing the vehicle would exceed 80% of its actual cash value because the statute *alternatively* states that "a motor vehicle . . . is a 'total loss'[] [w]hen an insurance company pays the vehicle owner to replace the wrecked or damaged vehicle with one of like kind and quality[.]" § 319.30(3)(a)1a. Moreover, it appears that the insurer retains a degree of discretion when deciding to repair a vehicle because it also states "[a] motor vehicle . . . shall not be considered a 'total loss' if the *insurance company and owner of a motor vehicle . . . agree* to repair, rather than to replace, the motor vehicle . . . ." § 319.30(3)(a)2 (emphasis added).

timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on June 12, 2024.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record